IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JESSE LUGARO,

v.                                      Civil Action No. 3:19CV807

HAROLD CLARKE,

## MEMORANDUM OPINION

Jesse Daniel Lugaro, a Virginia state prisoner proceeding pro se, brings this petition pursuant to 28 U.S.C. § 2254 (ECF No. 1) challenging his convictions in the Circuit Court of Virginia Beach, Virginia (the "Circuit Court").  Lugaro demands relief on the following grounds:

Claim One:      "The Petitioner was deprived of the 6th Amendment[] right to the effective representation of counsel when his attorney neglected to perform an independent pre-trial investigation that undermined his ability to develop exculpatory evidence."  (ECF No. 2, at 4.)[1]

Claim Two:      "The Petitioner incurred a contravention of the 6th Amendment[] right to the effective representation of counsel when his attorney failed to submit the state's allegations to any meaningful adversarial testing, inherently denying him a fair trial." (Id.)

Claim Three:    "The Petitioner sustained an infringement of the 6th Amendment[] right to the effective representation of counsel when his attorney refused to proffer any affirmative defenses to the state's allegations."  (Id.)

---

[1] The Court employs the pagination assigned by the CM/ECF docketing system to the parties' submissions.  The Court corrects the spelling, spacing and punctuation in the quotations from Lugaro's submissions.

Claim Four:    "The Petitioner's 5th and 6th Amendment[] right[s]
               to the due process and equal protection of the law[]
               w[ere] violated when the state court found him
               guilty for crimes that the essential elements had
               not been proven beyond a reasonable doubt."[2]   (Id.)

Respondent moves to dismiss on the ground that his claims lack
merit.  Despite the provision of Roseboro[3] notice, Lugaro has filed
no response.  For the reasons stated below, the Motion to Dismiss
(ECF No. 7) will be GRANTED.

---

[2] In his § 2254 Petition form, Lugaro avers generally that
four claims for relief exist, but he fails to state with any
specificity what those claims are, or to provide any of the factual
underpinnings of said claims.  Instead, in each instance, Lugaro
opted to write simply, "see[] memorandum."  (ECF No. 1, at 6, 7,
9, 11.)  In his accompanying "Memorandum in Support," Lugaro lists
the four claims stated above.  (ECF No. 2, at 4.)  However, rather
than addressing each ground for relief separately in an organized
and concise manner, Lugaro lumps all four claims into a section
that he calls "Arguments and Legal Analysis."  (Id. at 5-12.)
Lugaro's failure to delineate between claims complicates the
Court's ability to examine them.  This is especially true with
Claim Three, as discussed below.  Moreover, to the extent that
Lugaro attempts to "incorporate the entirety of the arguments and
authorities presented to the state court . . . by [] reference,"
to support his petition (see, e.g., id. at 6), he may not do so.
"A petitioner 'may not simply incorporate by reference' claims and
facts set forth in the state proceedings, but which are not recited
in the federal petition for a writ of habeas corpus."  Ingram v.
Buckingham Corr. Ctr., No. 3:09CV831, 2011 WL 836826, at *1 n.2
(E.D. Va. Mar. 4, 2011)(quoting Cox v. Angelone, 997 F. Supp. 740,
746 (E.D. Va. 1998)).  "Incorporation by reference does not conform
to the rules governing pleading for habeas proceedings."  Id.
(citing Davidson v. Johnson, No. 3:08cv406, 2008 WL 4159737, at *2
(E.D. Va. Sept. 9, 2008)).  Lugaro was required to include his
claims in his § 2254 Petition.  The Court will not parse Lugaro's
submissions in the state court to construct claims for Lugaro that
he did not present in his § 2254 Petition.

[3] See Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975).

## I.    PROCEDURAL HISTORY

Following a jury trial, Lugaro was convicted of attempted robbery, three counts of abduction, and three counts of use of a firearm in the commission of a felony, and was sentenced to forty-six years of incarceration. (Combined Record at 216-18, 220-21).[4] Lugaro appealed. (Id. at 222.)  On direct appeal, Lugero challenged the sufficiency of the evidence for his convictions. (Id. at 225.)  The Court of Appeals of Virginia denied Lugaro's petition for appeal.  (Id. at 225-30.)  The Supreme Court of Virginia refused Lugaro's initial petition for appeal as untimely. (Id. at 224).  However, upon motion of defense counsel, the Court subsequently granted Lugaro leave to file a delayed appeal. (Id. at 708.)  After reviewing the arguments of the parties, the Supreme Court nevertheless denied Lugaro's petition for appeal. (Id. at 42.)

While his delayed appeal to the Supreme Court of Virginia was pending, Lugaro filed a petition for a writ of habeas corpus in the Supreme Court of Virginia. (Id. at 43-47.)  In his supporting memorandum, Lugaro raised four claims.  (Id. at 52.)  The first three claims were largely similar to Claims One, Two and Three in the present § 2254 Motion.  (Cf. ECF No. 2, at 4.)  In the fourth

---

[4] The Supreme Court of Virginia provided a consolidated and paginated record for Lugaro v. Commonwealth, No. 170739, Lugaro v. Harold Clarke, No. 180971, and Lugaro v. Commonwealth, No. 181411 (hereinafter referred to as the "Combined Record").

claim, Lugaro criticized his attorney for failing to comply with "mandatory filing requirements," on appeal.   (Combined Record at 52.)   The Supreme Court found that Lugaro failed to establish ineffective assistance of counsel with regard to the first three claims, and that the fourth claim was rendered moot because Lugaro had been granted a delayed appeal.   (Id. at 687-90).   On February 28, 2019, the Supreme Court dismissed Lugaro's state habeas corpus petition.   (Id. at 685-90.)

## II.   EXHAUSTION AND PROCEDURAL DEFAULT

Before a state prisoner can bring a § 2254 petition in federal district court, the prisoner must first have "exhausted the remedies available in the courts of the State."   28 U.S.C. § 2254(b)(1)(A).   State exhaustion "is rooted in considerations of federal-state comity," and in Congressional determination via federal habeas laws "that exhaustion of adequate state remedies will 'best serve the policies of federalism.'"   Slavek v. Hinkle, 359 F. Supp. 2d 473, 479 (E.D. Va. 2005) (some internal quotation marks omitted) (quoting Preiser v. Rodriguez, 411 U.S. 475, 491-92, 492 n.10 (1973)).   The purpose of exhaustion is "to give the State an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights."   Picard v. Connor, 404 U.S. 270, 275 (1971) (internal quotation marks omitted).

Exhaustion has two aspects.  First, a petitioner must utilize all available state remedies before the petitioner can apply for federal habeas relief.  See O'Sullivan v. Boerckel, 526 U.S. 838, 844-48 (1999).  As to whether a petitioner has used all available state remedies, the statute notes that a habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented."  28 U.S.C. § 2254(c).

The second aspect of exhaustion requires a petitioner to have offered the state courts an adequate "opportunity" to address the constitutional claims advanced on federal habeas.  Baldwin v. Reese, 541 U.S. 27, 29 (2004) (internal quotation marks omitted) (quoting Duncan v. Henry, 513 U.S. 364, 365-66 (1995)).  "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim."  Id.  Fair presentation demands that a petitioner present "both the operative facts and the controlling legal principles" to the state court.  Longworth v. Ozmint, 377 F.3d 437, 448 (4th Cir. 2004) (internal quotation marks omitted) (quoting Baker v. Corcoran, 220 F.3d 276, 289 (4th Cir. 2000)).  The burden of proving that a claim has been exhausted in accordance with a

"state's chosen procedural scheme" lies with the petitioner. Mallory v. Smith, 27 F.3d 991, 994-95 (4th Cir. 1994).

"A distinct but related limit on the scope of federal habeas review is the doctrine of procedural default." Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998). This doctrine provides that "[i]f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." Id. (citing Coleman v. Thompson, 501 U.S. 722, 731-32 (1991)). A federal habeas petitioner also procedurally defaults claims when he or she "fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" Id. (quoting Coleman, 501 U.S. at 735 n.1).[5]

The burden of pleading and proving that a claim is procedurally defaulted rests with the state. Jones v. Sussex I State Prison, 591 F.3d 707, 716 (4th Cir. 2010) (citations omitted). However, in the interest of comity and judicial economy,

---

[5] Under these circumstances, even though the claim has not been fairly presented to the Supreme Court of Virginia, the exhaustion requirement is "technically met." Hedrick v. True, 443 F.3d 342, 364 (4th Cir. 2006) (citing Gray v. Netherland, 518 U.S. 152, 161-62 (1996)).

"a federal habeas court may, in its discretion, deny federal habeas relief on the basis of issues that were not preserved or presented properly by a state." Yeatts v. Angelone, 166 F.3d 255, 261 (4th Cir. 1999); see also Trisler v. Mahon, 3:09cv00167, 2010 WL 772811, at *3 (E.D. Va. Mar. 3, 2010) (raising issue of procedural default sua sponte to dismiss claim).  In either case, absent a showing of "cause for the default and actual prejudice as a result of the alleged violation of federal law," or a showing that "failure to consider the claims will result in a fundamental miscarriage of justice," this Court cannot review the merits of a defaulted claim. Coleman, 501 U.S. at 750; see Harris v. Reed, 489 U.S. 255, 262 (1989).

To exhaust his claims, Lugaro was required to properly present his claims to the Supreme Court of Virginia.  Lugaro did not raise Claim Four on direct appeal or in a state habeas petition, in so far as it was intended to invoke the Equal Protection Clause.[6]  If Lugaro now attempted argue that his "right to . . . equal protection of the law[] was violated," (ECF No. 2, at 4), by the trial court in a state habeas petition, that claim would be barred pursuant to the rule in Slayton v. Parrigan, 205 S.E.2d 680, 682 (Va. 1974), because Lugaro could have raised, but failed to raise,

---

[6] "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

7

that issue on direct appeal. Slayton constitutes an adequate and independent procedural rule when so applied. See Clagett v. Angelone, 209 F.3d 370, 379 (4th Cir. 2000); Mu'Min v. Pruett, 125 F.3d 192, 196-97 (4th Cir. 1997). Thus, when construed as an equal protection challenge, Claim Four is procedurally defaulted.[7]

### III. CONSTRAINTS UPON FEDERAL HABEAS CORPUS REVIEW

In order to obtain federal habeas relief, at a minimum, a petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996 further circumscribed this Court's authority to grant relief by way of a writ of habeas corpus. Specifically, "[s]tate court factual determinations are presumed to be correct and may be rebutted only by clear and convincing evidence." Gray v. Branker, 529 F.3d 220, 228 (4th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)). Additionally, under 28 U.S.C. § 2254(d), a federal court may not grant a writ of habeas corpus based on any claim that was adjudicated on the merits in state court unless the adjudicated claim:

> **(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

---

[7] When construed as a "due process," challenge to the sufficiency of the evidence, Claim Four also lacks merit, as discussed in Section IV, infra.

> **(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Supreme Court has emphasized that the question "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable — a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007) (citing Williams v. Taylor, 529 U.S. 362, 410 (2000)).

## IV.   SUFFICIENCY OF THE EVIDENCE

In Claim Four, Lugaro argues that the Circuit Court violated his Due Process rights when it "found him guilty for crimes that the essential elements had not been proven beyond a reasonable doubt." (ECF No. 2, at 4.) The Court construes this as a sufficiency of the evidence argument.

A federal habeas petition warrants relief on a challenge to the sufficiency of the evidence only if "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 324 (1979). The relevant question in conducting such a review is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319 (citing Johnson v. Louisiana, 406 U.S. 356, 362 (1972)). The critical inquiry on

review of the sufficiency of the evidence to support a criminal conviction is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." Id. at 318.

The Court of Appeals of Virginia aptly summarized the evidence of Lugaro's guilt as follows:

> The Commonwealth presented evidence that a masked gunman attempted to commit a robbery at a Subway restaurant on May 26, 2003. The assailant entered the restaurant after closing while the employees cleaned the premises. He forced two of the employees into the freezer at gunpoint. The perpetrator demanded that the third employee remove the money from the cash register. That employee informed him that the money received that day already had been deposited in the safe and she could not access it. While looking in the empty cash register, the assailant's gun accidentally discharged. He panicked and fled. The employees called 9-1-1.
> All three witnesses described the assailant as wearing torn and "peeling" latex gloves. The crime scene technician collected two pieces of latex glove that night as part of her investigation. She found one piece on the floor in front of the freezer and the other on the floor near the cash register. Deoxyribonucleic acid (DNA) evidence was collected from one glove fragment. At the time, no match was found to the DNA evidence derived from the glove recovered from the crime scene, but the profile was saved in the DNA data bank.
> The three employees present during the attempted robbery were unable to identify their assailant. However, two of the victims identified the pieces of latex glove found on the floor as the "same type" that the perpetrator wore. All three witnesses described the offender as Caucasian, from 5'5" to 5'7" tall, and as having a slim or medium build.
> Detective Bryan Smolen of the City of Virginia Beach Police Department described appellant as a "white male . . . approximately five foot seven and in the 150-pound range." In 2013, Smolen obtained a DNA sample from appellant. Subsequent forensic analysis identified appellant's DNA as matching the DNA collected from the

crime scene. []    Lisa Schiermeier-Wood, a forensic scientist supervisor at the Virginia Department of Forensic Science, testified that her analysis indicated that only one person's DNA material was on the piece of glove that she analyzed.

Several witnesses testified on behalf of appellant providing him an alibi.  His mother and his stepfather both testified that they specifically remembered that he was home with them all day.  The day of the robbery was Memorial Day of 2003, and appellant's parents hosted a cook-out.  Appellant attended the event and spent the night at their apartment.  His brother and a friend likewise testified that appellant was at his parents' barbeque all day and went to sleep there.  Appellant's mother explained that he wore latex gloves for his work as a tattoo artist and discarded his gloves when he finished with them.  She thought that he had given someone a tattoo that day at her home . . . .

The appellant argues that the Commonwealth did not exclude his "reasonable theory of innocence" that a different man retrieved his discarded gloves from a trashcan and used them to commit the instant offenses. He relies on the witnesses who testified on his behalf that he was at his parents' home when the crimes occurred.

The jury concluded that appellant was the person who committed the attempted robbery and the accompanying offenses.  His race, height, and build matched the general descriptions given by the victims. Significantly, his DNA was recovered from a piece of a glove worn by the assailant.  Further, the forensic expert specifically testified that she found only one person's DNA on the piece of glove that she analyzed.

The jury's rejection of appellant's alibi witnesses was within its purview as the fact-finder.  []  The jury was in the position to see and hear the witnesses as they testified and to make credibility determinations. []  The fact finder is "free to believe or disbelieve, in part or in whole, the testimony of any witness."  []

The jury's rejection of appellant's theory that a different person used his discarded gloves to commit the offenses was within its purview as the fact finder in light of the evidence in this case.

(Id. at 226-28 (footnote and citations omitted).)

At present, Lugaro does not contend that the actions of the assailant fail to satisfy the elements of attempted robbery, abduction or use of a firearm in commission of a felony; rather, his argument relates solely to the evidence identifying him as the perpetrator. (ECF No. 2, at 11.) "The only evidence," he maintains, that identifies him as the assailant, is the "small piece of latex glove that flaked off the gloves worn by the assailant," that had Lugaro's DNA on it. (Id.) This only proved, Lugaro argues, that he "had worn those gloves," not that he was the one wearing them at the time of the attempted robbery. (Id.) This argument lacks merit.

Lugaro ignores the fact that the employees' description of the assailant matched Lugaro in terms of race, height and build. (Combined Record at 228.) Standing alone, none of these factors, would identify Lugaro as the assailant; however, these facts do not stand alone. Lugaro concedes that the piece of latex glove worn by the assailant had his DNA on it. (ECF No. 2, at 11.) In that light, the respective value of each descriptive detail of the assailant provided by the victims that matched Lugaro increases exponentially with the addition of each successive matching characteristic and has a cumulative corroborative effect that cannot be denied or escaped.

The probability that a randomly selected person other than Lugaro contributed the DNA sample that was found on the latex glove

in this instance is approximately one in greater than 6.5 billion. (Combined Record at 227.)   When viewed in conjunction with the fact that Lugaro's DNA was the only sample found on the glove, (id. at 227-28), the chances of an innocent explanation for the presence of his DNA diminish significantly.   Combine that with the fact that Lugaro matched the descriptions given by the victims in terms of race, (id. at 228), and the chances become even more remote.   Add in the fact that Lugaro also matched the descriptions given by the victims in terms of height, (id.), and the chances wane further still.   Finally, heap on the fact that Lugaro's build also matched the descriptions given by the victims, (id.), and the chances are eroded almost to the point of nonexistence.

In short, Lugaro asked the jury to believe that he innocently left his DNA on the glove, and unwittingly discarded it in the trash, only to have another man, who was the same race as him, the same height as him, and had the same build as him, come along, pick it up out of the trash can, perhaps hold onto it for a while, then use it in the robbery attempt, all while perfectly preserving Lugaro's DNA on the glove, and simultaneously not leaving any hint of his own DNA behind.   It is no surprise that the jurors did not subscribe to this fanciful theory of innocence.

Lugaro also argues that his alibi witnesses helped create a reasonable doubt.   (ECF No. 2, at 12.)   However, as the Commonwealth pointed out in it's brief to the Virginia Supreme

13

Court, each of these individuals, Lugaro's mother, his step-
father, his childhood friend, and his brother, who was an
adolescent at the time of the attempted robbery, were impeached to
varying degrees.   (Combined Record at 33-34.)

Lugaro's mother admitted on cross examination that prior to
trial, she had provided a different alibi for Lugaro, which was
contrary to the alibi she testified to at trial.   (Id. at 33.)
Lugaro's step father claimed that he could recall the events of
Memorial Day 2003 with clarity, but he could not remember whether
he and Lugaro's mother were together at the time, stating that
they split up "between thirteen and fifteen years," prior to trial.
(Id.)   Lugaro's friend initially stated that he was a three-time
convicted felony, but later admitted that he was actually convicted
of six felonies, four of which involved crimes of moral turpitude.
(Id. at 33-34.)   Lugaro's brother initially testified incorrectly
that he was fourteen years old at the time of the Memorial Day
2003 picnic, however, he eventually admitted that he was actually
only twelve years old at the time.   (Id. at 34.)

In addition to being impeached by their own words or prior
criminal records, Lugaro's alibi witnesses were also directly
contradicted by Lugaro's statements to police. At trial, Detective
Smolin testified that Lugaro stated, after being advised of his
rights, that he was living in Delaware with his father in 2003,
and that he did not have any ties to Virginia at that time.   (Id.)

14

As the Court of Appeals reasonably concluded, based on their verdicts, the jury simply rejected the testimony of Lugaro's alibi witnesses, in favor of the Commonwealth's evidence, as they were allowed to do under the law. (Id. at 228.)

In any event, when viewed in a light most favorable to the prosecution, the Court cannot fairly say that "no rational trier of fact could have found proof of guilt beyond a reasonable doubt," based upon these facts. See Jackson, 443 U.S. at 319, 324. Quite to the contrary, the "record evidence," is that Lugaro's DNA was located at the scene of the crime on a piece of latex glove worn by the assailant, it was the only DNA sample recovered from the glove, and Lugaro matched the description of the assailant provided by multiple witnesses in terms of race, height and built; simply put, there is ample evidence to "reasonably support," a finding of guilt. Id. at 318 (key inquiry is "whether the record evidence could reasonably support a finding of guilt"). As such, Claim Four will be dismissed.

## V.   INEFFECTIVE ASSISTANCE OF COUNSEL

To demonstrate ineffective assistance of counsel, a convicted defendant must show, first, that counsel's representation was deficient and, second, that the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of Strickland, the

convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" Burch v. Corcoran, 273 F.3d 577, 588 (4th Cir. 2001) (quoting Strickland, 466 U.S. at 689). The prejudice component requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.   A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.   In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice.   Id. at 697.

### A.   Analysis of Claim One

In Claim One, Lugaro argues that counsel rendered ineffective assistance by failing to "perform an independent pre-trial investigation  .  .  .  to develop exculpatory evidence." (ECF No. 2, at 4.)   Specifically, Lugaro faults counsel for not obtaining pictures from when he was "arrested on 9-20-2002 and booked into the Kent County jail," in Delaware. (Id. at 8.)   These pictures, he contended, would "present  .  .  .  the jury with irrefutable evidence proving that the petitioner had tattoos," on the date in question.  (Id.)  Lugaro posits this would be relevant because "the eyewitnesses testified . . . that they didn't remember

16

seeing any tattoos on the assailant's hands, wrists or forearms, so any photographic evidence proving that the [P]etitioner had several tattoos on his hands, wrist and forearms prior to the 5-26-3003 event would have been sufficiently exculpatory and raised reasonable doubt." (Id. at 7.)

While Lugaro did not advance this exact issue on appeal, or in his state habeas proceeding, he did raise a similar argument before the Virginia Supreme Court in his habeas proceeding, at which time he was proceeding pro se. There Lugaro argued that counsel was ineffective because he "repeatedly advised," his attorney that he "had pictures that were taken prior to 5-26-2003, which clearly showed that [he] had several tattoos on [his] hands and forearms," and that he gave counsel the "names of person who could substantiate this fact." (Combined Record at 55.) Given the Supreme Court's guidance in Martinez v. Ryan, 556 U.S. 1 (2012), the Court will consider this latest iteration of Lugaro's position, even though it does not strictly conform with what he presented to the Virginia Supreme Court.

In summarizing the similar, albeit different position that was argued below, the Supreme Court of Virginia explained:

> [T]his claim satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland v. Washington, 466 U.S. 668, 687 (1984). The record, including the trial transcript, demonstrates an armed assailant attempted to rob a restaurant while three employees were present. The assailant, wearing a mask and latex gloves, was waiting

at the back door of the restaurant when an employee exited through the back door and the assailant attacked her, entered the restaurant, and attempted to take money from the cash register. However, the money from the register was already in the safe, and the assailant left. At trial, the three employees testified the assailant was wearing latex gloves that were torn and ripped. Each witness testified she could see the assailant's skin between his gloves and his shirt or jacket sleeves, and two witnesses testified they saw the assailant's skin through the holes in his gloves. One employee was not questioned about whether or not she saw tattoos on the assailant's hands and forearms, the second employee testified she did not remember seeing any tattoos, and the third employee testified she did not notice any tattoos.

Petitioner's counsel called petitioner's stepfather, Anthony Esposito, mother, April Esposito ("Esposito"), and childhood friend, Philip Anthony ("Anthony"), to testify at trial. Petitioner's stepfather testified petitioner got his first tattoo gun at seventeen years old and tattooed his hands and arms first. Esposito testified petitioner had tattoos on his hands and arms starting when he was seventeen years old, approximately two years before the attempted robbery. Anthony testified that, at the time of the incident, petitioner had tattoos on his hands and forearms. The Commonwealth put on no evidence rebutting petitioners' witnesses' testimony he had tattoos on his hands and forearms at the time of the incident. In his closing argument, counsel argued the Commonwealth had failed to prove petitioner was the assailant, arguing petitioner had tattoos on his forearms, where the witnesses testified they saw his skin, and none of the witnesses saw any tattoos.

Petitioner fails to proffer the names of any additional witnesses who would have testified about his tattoos, and petitioner indicated on a plea form and during the plea colloquy that he had discussed with his attorney the names of witnesses on his behalf and affirmed those witnesses were present or otherwise available for trial, there were no other witnesses he was aware of, and he had not given his attorney the names of any other witnesses. Petitioner does not proffer the photographs of his tattoos he claims he gave counsel. Counsel called three witnesses to testify about petitioner's tattoos, and each confirmed petitioner had

tattoos on his hands and arms at the time of the attempted robbery. Counsel argued this testimony demonstrated petitioner was not the assailant in light of the employees' testimony about the assailant's lack of tattoos, and counsel could have reasonably determined further evidence of petitioner's tattoos would have been cumulative of this testimony. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

(Combined Record at 686-672.)

The Court discerns no unreasonable application of the law and no unreasonable determination of the facts in this analysis. See 28 U.S.C. § 2254(d)(1)-(2). First, it is important to note that none of the employees affirmatively testified that the perpetrator did not have tattoos on his hands, wrists, or arms. Of the two employees that discussed tattoos, one did not remember, and one did not notice. As such, the value of any testimony counsel was able to develop on cross-examination regarding the presence, or not, of any tattoos was lessened. Put another way, this line of questioning could only serve to undermine the witnesses' ability to perceive the events going on around them, rather than overtly impeaching the veracity of their testimony by contradicting their statements, because none of the witnesses made a definite statement about perpetrator's tattoos for defense counsel to impeach.

This attempted robbery took place in 2003. (Combined Record at 226.) The trial did not occur until 2016. (Id. at 215.) The fact that one witness did not remember whether there was a tattoo

on a partially covered portion of the perpetrator's body after more than a decade is not surprising. Similarly, it is not surprising that the other witnesses did not report noticing any tattoos during the incident. Under the stress of an attempted robbery, while being abducted by a gun-wielding, masked assailant, it is not unreasonable that the jury excused the victims for failing to be keenly focused on what tattoos the assailant may or may not have had partially hidden under his gloves and jacket. The jury reasonably could have believed that the victims were simply more focused on more pressing issues, like where the assailant was pointing his gun, which was ultimately discharged during this encounter.

Had defense counsel called the unnamed witnesses that Lugaro told the Virginia Courts he had requested, there is no reason to believe that this cumulative testimony would have had any impact on the jury's assessment of the victim's credibility. It is obvious from the verdicts that the jurors believed the core components of the three employees' testimony, despite being presented with evidence that Lugaro was tattooed at the time of the incident. As the Court of Appeals adequately noted, the jury simply rejected Lugaro's theory of innocence, which "was within its purview as the fact finder." (Combined Record at 228.)

The same could be said of the 2002 booking photographs from Delaware that Lugaro now complains were not introduced. They too

would be cumulative, and there is no indication that they would
serve to change the jury's view in any form or fashion. Moreover,
to the extent counsel was presented with information concerning
these booking photographs before trial, which it is not clear that
he was, it was not unreasonable for him to refrain from trying to
introduce any mention of that evidence before the jury. In order
to introduce this evidence, as Lugaro posits that he should have,
counsel would have needed to call a witness to authenticate the
booking photographs. In all likelihood, that would mean calling
the arresting officer, or some other representative of his agency.
In so doing, counsel would flag for the jury the fact that Lugaro
was no stranger to the criminal justice system and risk prejudicing
his client further based on a prior arrest that otherwise may not
have been relevant or admissible.

In any event, counsel cannot be faulted for failing to
introduce cumulative and potentially prejudicial evidence of his
client's past arrest photographs in order to prove a point of
marginal significance. Because Lugaro has demonstrated neither
deficiency of counsel nor prejudice, Claim One will be dismissed.

### B.   Analysis of Claim Two

In Claim Two, Lugaro claims that his attorney was ineffective
because he "failed to submit the state's allegations to any
meaningful adversarial testing." (ECF No. 2, at 4.) Specifically,
he argues that his attorney should have asked that a second piece

21

of latex glove recovered from the crime scene be tested for the
presence of another person's DNA.  (Id. at 9-10.)   In summarizing
and rejecting this claim, the Supreme Court of Virginia made the
following findings:

> [P]etitioner contends he was denied the effective
> assistance of counsel because counsel should have had
> the second piece of latex glove tested for DNA because
> it   could   have   contained   the   DNA   of   the   actual
> perpetrator.
> The Court holds this claim satisfies neither the
> "performance" nor the "prejudice" prong of the two-part
> test enunciated in Strickland.   Counsel could have
> reasonably determined that, because the second fragment
> also could have contained only petitioner's DNA, the
> better trial strategy was not to ask that it be tested,
> but to use the lack of testing, as well as an explanation
> of how petitioner's DNA was on the tested fragment if he
> was not the perpetrator, to cast doubt on the otherwise
> credible   evidence   of   petitioner's   identity   as   the
> assailant.   Thus, petitioner has failed to demonstrate
> that counsel's performance was deficient or that there
> is a reasonable probability that, but for counsel's
> alleged errors, the result of the proceeding would have
> been different.

(Combined Record at 688.)

The Court discerns no unreasonable application of the law and
no unreasonable determination of the facts in this analysis.   See
28 U.S.C. § 2254(d)(1)-(2).   As the DNA technician testified at
trial, there was only one DNA sample, Lugaro's, identified on the
piece of glove that was tested.   (Combined Record at 227.)   Given
that fact, counsel had little reason to believe, as opposed to
merely hope, that further testing would yield a different result.
As the Virginia Supreme Court observed, defense counsel made

reasonable use of the evidence at hand and offered appropriate arguments to the jury.

Federal Courts have long recognized that it is often preferable to point to "an empty chair," rather than following a particular evidentiary lead to its ultimate conclusion when doing so might expose a trial strategy to "the danger of refutation." See, e.g., Smith v. Stewart, 140 F.3d 1263, 1273 (9th Cir. 1998) (counsel in death penalty case was not ineffective for failing to locate a witness whom defendant accused of committing the murder at issue). By not asking for additional testing, defense counsel left open the option to attack the Commonwealth's case as incomplete and poorly investigated, while at the same time, allowing himself to argue with a straight face that any number of other individuals, who had access to Lugaro's discarded gloves, could have perpetrated these crimes. Had the second piece of latex been tested, both avenues of defense could have been foreclosed, or at a minimum significantly curtailed. In any event, "there are many ways" for defense counsel "to be effective," and courts "must resile from," attempts, such as the one advanced here by Lugero, to "lure us into the hindsight miasma that the Supreme Court has told us to avoid." Id. (citing Strickland, 466 U.S. at 689). As Lugaro has failed to show any deficiency of counsel or prejudice Claim Two will be dismissed.

### C.   Analysis of Claim Three

In Claim Three, Lugaro argues that his trial attorney was ineffective because he "refused to proffer any affirmative defenses to the state[']s allegations."   (ECF. No. 2, at 4.) Because Lugaro's "Arguments and Legal Analysis," section does not delineate between claims, it is difficult to discern exactly what Lugero means by this.   (Id. at 5-12.)   He does not specify which affirmative defense he believes his attorney should have advanced, but did not.   (Id.)   In addressing this portion of Lugero's state habeas petition, the Virginia Supreme Court seems to have construed Lugero's claim as one of cumulative prejudice.   (Combined Record at 689-90.)   In dismissing that claim, the Supreme Court said:

> The Court holds claim (3) is without merit.  As addressed previously, petitioner's individual claims of ineffective assistance of counsel are without merit. Having rejected each of petitioner's individual claims, there is no support for the proposition that such actions when considered collectively have deprived petitioner of his constitutional right to effective assistance of counsel.  (Id. (citations and quotation marks omitted).)

This does not appear to be an unreasonable construction of Claim Three, given Lugaro's statement in the present case that:

> Counsel[']s numerous negative trial errors ultimately undermined the fundamental fairness of the petitioner[']s trial and counsel[']s failure to perform the duties mandated by the A.B.A. standards for criminal justice allowed the state[']s case to go virtually unchallenged by any meaningful adversarial testing. (ECF No. 2, at 11.)

24

To the extent Lugero was trying to advance a cumulative claim of ineffective assistance of counsel, the Supreme Court of Virginia correctly concluded that such an analysis is not permitted.   See Fisher v. Angelone, 163 F.3d 835, 852-53 (4th Cir. 1998).   Attorney "acts or omissions 'that are not unconstitutional individually cannot be added together to create a constitutional violation.'" Id. (quoting Wainwright v. Lockhart, 80 F.3d 1226, 1233 (8th Cir. 1996)).   To the extent Lugero was trying to advance an argument other than cumulative prejudice, he failed to clearly articulate his position.   In either instance, Claim Three will be dismissed.

## VI.   CONCLUSION

For the foregoing reasons, Respondent's Motion to Dismiss (ECF No. 7) will be GRANTED.   Laguro's § 2254 Petition (ECF No. 1) will be DENIED.   The action will be DISMISSED.

An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA").   28 U.S.C. § 2253(c)(1)(A).   A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).   This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"   Slack v.

McDaniel, 529 U.S. 473, 484 (2000) (quoting Barefoot v. Estelle,

463 U.S. 880, 893 & 4 (1983)).  Lugaro fails to meet this standard.

A certificate of appealability will be DENIED.

The Clerk is directed to send a copy of the Memorandum Opinion

to Lugaro and counsel for the Respondent.

It is so ORDERED.

_____ /s/

Robert E. Payne
Senior United States District Judge


Richmond, Virginia
Date: August 11, 2020